Our fourth case is also, of course, WSOU Investments v. Google, 2022, 1066 and 1067. Mr. Coyde. Thank you, Your Honor. I will try to start talking about these, but these are addressing two very different issues, two cases. So if Your Honors want me to direct to one or the other, I'll try to start. And as we noted in our brief, we see the commonality of the errors here is that the judge employed kind of simplistic rules as shortcuts. For the alerting unit, Google encouraged the judge to treat unit as a classic non-squared, similar to what they kind of employed for the processor terms. And the judge bought into it. But none of the authorities cited by Google established the unit as a non-squared. To the contrary, again, we understand that everything is case by case. But if you look at the reasoning of DIFAN 2, that was a case that construed a system claim. And it found, as part of that system, unit terms which it characterized as structural. And, of course, you have terms like central processing unit, graphical, you know, GPU, graphical processing unit. There's no authority that unit is inherently unauthorized. Judge Lin actually asked a question. I might have kind of heard what I thought he was asking for, but what type of presidential law would be helpful in this area? I think one area that would be very helpful would be something clear to say, to disabuse litigants and judges of that a non-squared is just like a free pass. You know, the judge here used the non-squared terminology and he just gave up after that. He just wanted to find an easy out for unit. And so I think another way to put it, maybe if you want to do it case by case, is just to police and guard, kind of be as a gatekeeper to make sure those non-squareds don't creep in. So all of a sudden, you know, not only is means subject to presumption, but a whole host of other terms, which is kind of going to be ever increasing. So that would be my suggestion on kind of maybe precedent. I mean, I've always thought of a non-squared as just a name you put on something to reflect the conclusion you reach after looking for what that word means. And if you can't find a meaning other than a generalization of some sort, you conclude that it's just a non-squared. It's the problem I see it is that a lot of times people look at words and they start with, okay, that's a non-squared. Just pull it out of thin air and work from there. And that to me is backwards. I agree, Your Honor. I think that's what happened here with respect to, I mean, I'll just talk about this case with respect to unit. I mean, we have to look at the word unit. We have to look at the word alerting. And we have to assess what significance does that expression have to one of ordinary skill in the art? Right. And, Your Honor, if it segues into my next point about alerting unit is that here, as we described on page 36 and 37 of our blue brief, alerting unit defines a structure when it says configure to. And then we've highlighted all the alerting that we configure to issue alert. It's got, I don't know, like 10 lines of text that we're talking about here where different things the alerting unit does. And DIFAN 2 at 1368 teaches us that the structure, when structure-connoting term here, unit, is coupled with a description of operations, sufficient structural meaning generally will be converted, conveyed to oppose it. Where is the alerting unit in Figure 1? I do not, I can't, I don't know the answer to that question. Your Honor, I'm just looking at it right now. I'd have to, I'm sorry, I'm looking at the wrong patent. Sorry. Well, isn't that a problem? No, hang on. Let me just look at the right patent before I get to it. OK. 563. Make sure I'm looking at the right patent. Yes, Your Honor. This is a hard case to brief with the different. Well, maybe you could come back and rebuttal. Sure. Yeah, it does talk about the mobile phone comprising a central processing unit 10. And the CPU is equated as the unit. So, it would be, I think it would be that. But let me get. Wait, wait, wait. This question is pretty important to me. So, I want to know, you're saying it's element 10 is the alerting unit? What do you say? We identified the corresponding structure below as the central processing unit 10. And then we also identified columns 3, 55 to 68. This is on APPX663 of the district short, the memorandum where he summarizes what our structure is. And so, figure 1, the whole thing that's in the box is element 10. So, that's the unit? Yes. No. When I'm looking to see where we're in the specification, it identifies where the alerting unit is. I mean, I know what you're arguing, but I'm looking for the text in the specification. Right, your honor. Well, as we described on page 37 of our brief, it talks about in those different types of alarms that are being signaled at columns 3, 5 to 8, 365 to 67. Alarms being generated by the mobile phone at 3 to 8 to 12, 4, 9 to 16. So, we have all the citations there. Well, yeah, I mean, you're attributing different things and characterizing different things. But the question I have is, what does the patent say? Well, I understand what you're saying. I think that's similar to what Google argued, but then we cited the case law that you don't need the magic incantation of, you know, alerting unit. You don't need to say it. And so, that's what they focused on. They looked at, like, when it would help. Yeah, it would help a lot. And even so, it's a little unclear to me what you're now pointing to, specifically, as being what the alerting unit is. Well, I think it's consistent with what we're now pointing to, is what we pointed to below. And what you said below was the processor memory and computer program code constitute corresponding structure? When you say the, which one are you referring to? I'm sorry, I didn't hear what you said, your honor. I'm just looking at your submission. It's on page A663, you said before. And you said, structure, the processor memory and computer program code constitute corresponding structure. So, I'm asking you, where in the patent will I find the processor memory and computer program code that you're referring to? I can't, I'm having a hard time understanding what you're saying, the corresponding structure is. Well, again, we pointed to 5, I mean, 3.21, which refers to, let me turn to it. A central processing unit 10. And it talks about which controls the operation of the phone and accords with software stored in the read-only memory 11. So, we did identify that below. So, for the corresponding structure, you just gave, one, two, three, four, five sites to different columns and lines in the patent. They're the same sites that we cited below, your honor. And we cited to 3.21. But did you ever say exactly what the corresponding structure was in U of T? Instead of just giving sites, you don't say what you think it is, as you did, for example, in the limitation above. No, and below, I think, if you're asking me, do we describe it? Did you name something? Did you name something? No, we pointed to column and line size, your honor. Thank you. Yes. Counsel, I want to point out to you that in both of these patents, there were claims that expressly used the term means. So, the presumption here goes against you, doesn't it? Claim 16, issuing means, issuing an alert. And 24, an apparatus comprising three means clauses. So, the presumptions are against you here, right? Yeah, your honor. But in both of those, the parties agree that 112.6 applies. The issue on those terms is whether there's corresponding structure. There's no dispute that 112.6 does express means claims. Now, I'll briefly address, your honor, the one that's universal to the other thing we haven't talked about is the second part term. And there, what we see the error as the court admitted that he did the evaluation solely on the claim language standing alone. And nature simulations, which we're calling nature simulations too because there was a modification to that, says that that approach deviates from the standard protocol of this court and violates the rule that claim collection standing alone is not the correct standard of law and contrary to precedent. We're aware, neither side found any, we tried to find it and Google was able to find it, but in any case it said, just because something is, what I would call, grammatically nonsensical, that it's indefinite. Absent any evidence from opposed to saying so. We have cited in page one of- You're arguing the claim should be interpreted in a way that would add to the claim limitations about borders that- Essentially, I mean- Those words don't appear in the claim. Sure, I understand, your honor, but it's in the context of the figures in the description. I've tried to look at different examples, and this might sound a little silly, but if a mom was to say, everything between mommy and baby is mommy, that doesn't make any sense. If a pregnant mom pats her belly and says, everything between mommy and baby is mommy, then you understand, okay, she means the space in between. And so when you look at the figures, or when you look at the specification description, which is consistent. It's not, this isn't something where there was a different description and a different articulation. And you look at the past history where the examiner encouraged the applicants to add this language and then also stated that same language in the reasons for allowance. The problem I have is that we can't rewrite the claim. I mean, it's pretty clear that this was not what was intended. And, but the claim is what it is. I agree the claim is what it is, your honor. I would say this calls it, there's a, I think in Dye Fan, which is a different context, talks about that claim not being the model of clarity. So I would agree, this isn't the model of clarity, but that's not the test. Not the only claim that we see that's not a model of clarity. We seem to probably get a lot of them, your honor, but that's not the test. The test is whether it be understandable or not, but it's the- You mean, speaking English, a person is still in the office? Yes, I'm sorry, your honor. You're well into your rebuttal time. Okay, I'll save the rest, your honor, but thank you very much. Counsel, would you pronounce your name for us, please? Yes, your honor, it's Sweezy. Sweezy. Good morning, may I please- Please proceed. Thank you, your honor. Good morning, may I please the court. The district court for each of these terms properly considered the intrinsic record, and for specific reasons, particular to each claim, properly found them indefinite. I will focus on the two terms that WSOU's counsel addressed, but happy to answer questions about the others, the other one. Starting with the alerting unit term, let me see if I can address the court's questions and the discussion in a few points. First, the threshold inquiry here is whether alerting unit is a means plus function term, and it is, and the district court properly analyzed not just the word unit, but the fact that it is alerting unit configured to issue an alert, and I think this point really should be undisputed, that alerting unit is a means plus function term. And I'll give you two reasons. First, while WSOU pointed to pages 36 and 37 of its brief as to claim language that it said made this structural, those are exactly the same limitations that WSOU agrees are term instead of alerting unit. So at page 41 of WSOU's brief, it says, the district court correctly found that these two limitations are functions, initiating a connection to another communication terminal over a network, and causing the signaling means to locally signal to the user. So the language that follows alerting unit, alerting unit configured to, is admitted to be functional, and it is functional, it's simply reciting functions. As to alerting unit itself, in WSOU's reply brief, at page 10, at the bottom, final sentence, it says WSOU never argued that alerting, what Google calls a prefix, imparted structure, but instead highlighted other language, and that other language is a language I just walked the court through. So this really shouldn't be a dispute that alerting unit is a means plus function claim, and just to confirm it, going back to some references earlier about when the patentee uses a term interchangeably with means, that is what we have here. I've compared claim one to claim 16, and other than the alerting unit term and the issuing means term, they are identical. I think one term uses V and another term uses A in one instance. Why isn't, assuming that we would agree with you, that it's written in 112 six paragraph language, why wouldn't we then find that there's sufficient structure based on the disclosure and the specification that WSOU has pointed to? Yes, Your Honor, and this will address both the alerting unit term and the issuing means term together. So a few points there, Your Honor. There is no depiction of an alerting unit in the patent. The patent only discusses alerting unit at columns two and three, and when it discusses alerting unit at those passages, it's simply restating the same claim language that is functional, so it's not providing any structure for alerting unit. There is, with respect to the figure of this patent, there's no suggestion in the patent that anything in that figure is an alerting unit. After the patent uses the term alerting unit in the context of functional language, it never then again discusses alerting unit, never provides neither any disclosure linking structure to alerting unit, nor any structure that is linked to the specific functions of alerting unit. What about the argument today that it's element 10 in figure one? Does that change anything? No, Your Honor. The district court considered this and also considered box 20. Those are empty boxes. There's nothing in there that actually says to a person of ordinary skill in the art how to perform an alerting unit. We just don't have any disclosure that says how to- What the structure is, not just how to perform, but what the structure is. Exactly, Your Honor. That's right. There was reference to this court's DIAFAN case, and yes, there was a unit term in that specific. Those unit terms were very different. Alerting unit here, there's never been a suggestion that it has a commonly understood meaning in the art. In the DIAFAN case, the terms were a first broadcast short-range communications unit, and a second broadcast short-range communications unit. Those were in the context of claim language reciting a building that had those units. Very different context where there was structure for those unit terms. That is not present here. I'm happy to address anything else on the alerting unit term. Otherwise, I'll turn to the second part term. Thank you. With respect to second part, this falls squarely within this court's line of precedent of quintessentially nonsensical terms. We heard from WSOU's counsel this morning that they admit this is grammatically nonsensical. That ends the inquiry because it is not this court's role or the district court's role to rewrite claims. WSOU is offering, I think what it calls a claim construction for second part that would rewrite the claim and use words like boundary that do not appear anywhere in the specification, so there's no support for that alleged construction. What we really have here is if this is so easily fixable, there are multiple ways that a patentee can go to the patent office or go to the district court to seek a different claim, have a certificate of correction, or reissue many avenues. WSOU did not pursue those in this court's case law in the long line of precedent. Chef America, Allen Engineering, Horizon, Process Control, Synchronos, Trustees of Columbia says that when a patentee uses claim language that just doesn't make sense, that the result is that the claim is indefinite. I would just add here that this patent was a patent where WSOU did not even brief this issue in reply. Then when the district court provided his preliminary guidance before the Markman hearing as to what he tentatively thought each claim would mean or if it was indefinite, he said it was indefinite, and WSOU did not elect to argue this at the claim construction hearing. So really, for whatever reason, WSOU has not attempted to correct it the right way, and it should not be done through the back door of claim construction. If the court has no further questions, we would ask you to affirm across both appeals and both patents. Thank you, counsel. Mr. Cordy has a little time left. Just briefly, Your Honor, on counsel's point about, for the alerting unit, the fact that there were parallel claims in mean plus function format, I mean, again, they tend to view it as, well, that must mean the same thing, and they try to meld them all together. To me, that's an indication that there was an intent to not have this claim be in means plus function format because of the parallel structure. Their point about calling the functional language that we point out, you know, DIFAN 2 talks about combining a structural connoting term that is coupled with a description of operations. That's merely what's done here. So they're trying to squeeze it into, force it into a means plus function, but again, this is something structural. On the second part, we noted the case on page 1 of our reply microprocessor text instrument. This court has addressed apparent nonsensical readings, nevertheless found to be indefinite, not indefinite in view of the full intrinsic record. And what my point was is, when I said, like, it's not the model of clarity, it's not the law review mode, like, you're kind of like this grammarian, you're thinking everything. But Google didn't come forward with a POSITA saying, well, as a POSITA, I wouldn't understand that. To a POSITA, it would be understandable. To a POSITA looking at the figures, and the best example of a POSITA we have, the only POSITA knowledge we have here is the examiner. The examiner, you know, encouraged the applicant to put that, he put that language in, he reviewed it, obviously, when he saw the specification, he reviewed the language, he saw the claims, he told the applicant to put that language, and he put that language in the reasons for allowance. So that is the POSITA knowledge. They have no POSITA knowledge on their side. So with that, we would ask that the court reverse on both of these. Thank you very much. Thank you, counsel. The case is submitted, and that closes today's argument. Thank you very much.